## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Edward Ross Bergren, individually,
and on behalf of all others similarly situated,


                Plaintiff,

vs.

The Minnesota Department of Corrections,
and Tom Roy (its  Commissioner), Nan Larson
(its Director of Health Services), Dr. David
Paulson (its Medical Director), and Michelle
Smith (Stillwater Prison Warden), in their
individual capacities (damages) and in their
official capacities (injunctive relief); Dr.
Darryl Quiram, Centurion of Minnesota, LLC,
Dr. Elicia Brown and Cross County Healthcare,
Inc. d/b/a/ Medical Doctors Associates,


                Defendants.
_____

Civil File: 14-CV-4658 (PAM/HB)

**AMENDED
CLASS ACTION
COMPLAINT**


**JURY DEMAND**


      Plaintiff, Edward Ross Bergren, individually, and on behalf of all others similarly

situated, for his causes of action against the Defendants above named, states and alleges

as follows:

### INTRODUCTION

      1.     This class action for damages and injunctive relief is brought pursuant to 42

U.S.C. § 1983 and the Eighth Amendment to the Constitution of the United States,

alleging violations of the constitutional rights of the Plaintiff and the members of the

class he represents. Plaintiff, on behalf of himself and all those similarly situated, seeks redress for Defendants' unlawful and unconstitutional policy, custom and/or practice of denying the prescription medication Lyrica to all non-diabetic inmates for whom it has been prescribed.  Plaintiff and the class members he represents are being denied access to this drug—which has been specifically prescribed for them by their attendant medical personnel—on the basis of a blanket policy that Lyrica will not be provided to any non-diabetic inmate.   The denial of this prescription medication constitutes an unconstitutional denial of necessary medical care and constitutes deliberate indifference to the serious medical conditions for which Lyrica has been prescribed for these inmates.

2.      In addition to being FDA approved for Neuropathic Pain Associated with Diabetic Peripheral Neuropathy, Lyrica it is also FDA approved for several conditions not necessarily associated with diabetes, including Postherpetic Neuralgia, Fibromyalgia, Partial Onset seizures (as adjunctive therapy), and Neuropathic Pain Associated with Spinal Cord Injury.  Moreover, Lyrica is regularly prescribed "off-label" for numerous disorders, including Restless Leg Syndrome, Generalized Anxiety Disorder, chronic pain, migraine headaches, and pain after surgery.

3.      Under Defendants' blanket policy, Lyrica is withheld regardless of the non-diabetic condition for which it was prescribed, regardless of the medical condition of the inmate to which it is being denied, regardless of its effectiveness in treating the condition for which it was prescribed, and regardless of the effectiveness of the substitute

medication (on information and belief, usually generic Gabapentin (originally sold as "Neurontin") being given in its place.

4.     Inmates are completely denied access to the Lyrica that has been prescribed for them, with no recourse.  There is no mechanism for them—or medical personnel—to show that the denial of the Lyrica is causing serious pain, discomfort or injury, and there is no mechanism to show that the substitute medications are not effectively providing the relief the Lyrica was prescribed for.

**PARTIES**

5.     Plaintiff Edward Ross Bergren is an individual currently residing in the Stillwater Prison, County of Washington, State of Minnesota.

6.     The Minnesota Department of Corrections ("DOC") is an agency of the State of Minnesota responsible for housing inmates in the Minnesota Correctional system.  It is responsible for providing inmates in the system with adequate medical care. Its main offices are located at 1450 Energy Park Drive, Suite 200, St. Paul, Minnesota 55108.  No causes of action for damages are brought against Defendant DOC.  All causes of action for injunctive relief are brought against Defendant DOC.

7.     Defendant Tom Roy is the duly appointed and acting Commissioner of the Minnesota Department of Corrections. As such, Defendant Roy is, and was, a duly appointed agent, authorized to enforce the law, and was acting under the color of the law at all times herein material. All causes of action for damages are brought against Defendant Roy in his individual capacity.  All causes of action for injunctive relief are

brought against Defendant Roy in his official capacity as the Commissioner of the Minnesota Department of Corrections.

8.     Defendant Nan Larson is the duly appointed and acting Director of Health Services of the Minnesota Department of Corrections. As such, Defendant Larson is, and was, a duly appointed agent authorized to enforce the law and was acting under the color of the law at all times herein material. All causes of action for damages are brought against Defendant Larson in her individual capacity.  All causes of action for injunctive relief are brought against Defendant Larson in her official capacity as the Director of Health Services of the Minnesota Department of Corrections.

9.     Defendant Dr. David Paulson is the duly appointed and acting Medical Director of the Minnesota Department of Corrections. As such, Defendant Paulson is, and was, a duly appointed agent authorized to enforce the law, and was acting under the color of the law at all times herein material. All causes of action for damages are brought against Defendant Paulson in his individual capacity.  All causes of action for injunctive relief are brought against Defendant Paulson in his official capacity as the Medical Director of the Minnesota Department of Corrections.

10.     Defendant Michelle Smith is the duly appointed and acting Warden of Stillwater Prison.  As such, Defendant Roy is, and was, a duly appointed agent authorized to enforce the law and was acting under the color of the law at all times herein material. Stillwater prison is located at 970 Pickett Street, Bayport, Minnesota, 55003-1490.  All causes of action for damages are brought against Defendant Smith in her individual

capacity.  All causes of action for injunctive relief are brought against Defendant Smith in her official capacity as the Warden of Stillwater Prison.

11.     Defendant Centurion of Minnesota, LLC ("Centurion") is Limited Liability Corporation organized and existing under the laws of the State of Minnesota with its principle place of business at 7700 Forsyth Boulevard, St. Louis, MO 63105.

12.     On information and belief, Defendant Centurion had, at all times material, a contract with defendant DOC to provide health care and prescription services in its prisons, including the Stillwater Prison.  As such, Defendant Centurion and its employees were the agent of Defendant DOC and were acting under color of state law at all times herein material.  Centurion's authorized agent for service in Minnesota is CT Corporation Systems, Inc., 100 South Fifth Street, Suite 1075, Minneapolis, MN 55402.

13.     Dr. Darryl Quiram is an employee of Defendant Centurion and was, and is, a physician providing medical services to inmates in the Stillwater Prison, including Plaintiff Edward Ross Bergren.  As such Drs. Quiram was, at all times material herein, an agent of Defendant DOC and acting under color of state law.

14.     Defendant Cross County Healthcare, Inc. ("Cross Country") is a corporation organized and existing under the laws of the State of Delaware with its principle place of business at 6552 Park of Commerce Boulevard, Boca Raton, Florida 33487.

15.     On information and belief, Defendant Cross Country is a staffer of temporary medical health professionals and provided temporary medical doctors to

Defendant Centurion, which doctors provided health care and prescription services in DOC prisons, including the Stillwater Prison.  As such, Defendant Cross Country and its employees so temporarily employed were the agents of Defendant DOC and were acting under color of state law at all times herein material.

16.     On information and belief, Dr. Dr. Elicia Brown is an employee of Defendant Cross Country and was a physician providing medical services to inmates in the Stillwater Prison, including Plaintiff Edward Ross Bergren.  As such Drs. Brown was, at all times material herein, an agent of Defendant DOC and acting under color of state law.

## JURISDICTION AND VENUE

17.     This is a civil action arising under the Constitution of the United States and 42 U.S.C §§ 1983 and 1988.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

18.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events and omissions upon which this action is based occurred in this District.

## GENERAL ALLEGATIONS

19.     In October 2006, Plaintiff Edward Ross Bergren was diagnosed with Restless Leg Syndrome ("RLS").  RLS is characterized by uncomfortable sensations in the legs (and sometimes arms or other parts of the body) and an irresistible urge to move the legs to relieve the sensations. The condition causes an uncomfortable, "itchy," "pins

and needles," or "creepy crawly" feeling in the legs. The sensations are usually worse at rest, especially when lying or sitting.  Because RLS usually interferes with sleep, it is also considered a sleep disorder.  Plaintiff Edward Ross Bergren was prescribed Neurotin (generically known as "Gabapentin") 400 mg twice per day for his RLS.  His prescription was increased to 600 mg twice per day in January 2007.

20.    On or about November 18, 2011, Plaintiff Edward Ross Bergren was diagnosed with "Sensorimotor polyneuropathy."  Sensorimotor polyneuropathy is a body-wide (systemic) process that damages nerve cells, nerve fibers (axons), and nerve coverings (myelin sheath).  Damage to the covering of the nerve cell causes nerve signals to slow down. An electromyelogram performed on Noevmber 18, 2011 suggested that Palintff Edward Ross Bergren suffered primarily from "axonal sensorimotor polyneuropathy."  His symptoms included weakness, numbness, "pins-and-needles," and burning pain.  His axonal sensorimotor polyneuropathy was also treated with Gabapentin.

21.    Over time, the symptoms of Plaintiff's RLS and axonal sensorimotor polyneuropathy progressed to the point where Gabapentin was not providing relief from his pain and other symptoms.  By March 14, 2014, Plaintiff Edward Ross Bergren was taking 1200 mg twice per day of Gabapentin but, Dr. Wolk at Stillwater Prison noted he was only receiving "limited relief."  The symptoms became so bad that he was unable to sleep and suffered sleep deprivation.

22.    On March 14, 2014, Dr. Wolk diagnosed Plaintiff Edward Ross Bergren as suffering from "acute and chronic low back pain, Axonal sensory motor polyneuropathy

and lipomatous-like mass causing neck pain and headache in the posterior neck." Although that record did not specify it, Plaintiff Edward Ross Bergren also continued to suffer from chronic RLS.  In addition to giving Plaintiff Edward Ross Bergren injections for pain management, Dr. Wolk added the prescription drug Lyrica to his prescription of the Gabapentin.   He was to start the Lyrica at 75 mg twice per day for one week and then increase it to 150 mg twice per day.

23.    The Lyrica was much more effective in controlling the itching, pins-and-needles and burning pain, and the other symptoms of Plaintiff's RLS and polyneuropathy. Plaintiff received great relief from the Lyrica and was again able to sleep.

24.    Plaintiff's prescription for Lyrica was refilled on April 11, 2014 at 150 mg per day and he continued to take Lyrica for several months with great effectiveness and relief.   In August 2014, Plaintiff saw Defendant Dr. Brown in the jail and received another Lyrica refill.  However, he was not given the prescribed Lyrica.  Instead, he was given no medication for his RLS and polyneuropathy for approximately two weeks. During his time, his symptoms were excruciating.  When medication was finally restored, he was given Gabapentin instead of Lyrica.  The note of Defendant Dr. Brown dated August 1, 2014 states that "the patient is unable to receive Lyrica because Lyrica is only prescribed for diabetic neuropathy."  The note of defendant Dr. Quiram dated August 8, 2014 more accurately reports that "it is the directive from the medical director, Dr. Paulson that Lyrica only be prescribed for diabetic neuropathy."

25.     Since at least August 1, 2014, Plaintiff has been given generic Gabapentin instead of the Lyrica that he was prescribed.  During that time, his symptoms, while better than when he received no medication at all, have become much worse than they were while on the Lyrica.  His pain, burning, and pins-and needles, and the other symptoms of Plaintiff's RLS and polyneuropathy, have again become so bad that they prevent him from getting adequate sleep.  Plaintiff has never been taken off the Lyrica by an examining physician.  Instead, he was denied the Lyrica he was prescribed by a blanket policy instituted by a medical director he has never seen and who has never examined him.

26.     Plaintiff has been informed since August 1, 2014 that he is no longer being given his prescribed Lyrica because of a policy that provides that only diabetics will receive Lyrica.  In response to Plaintiff's request for a copy of the policy regarding Lyrica, he was told in writing on September 19, 2014 by a jail nurse that "I reviewed this with Dr. Quiram who informed me this direction was given to DOC providers by the medical Director, Dr. Paulson – there is no written memo or policy."  The medical record of that day confirms that "Dr. Quiram . . . informed me this directive isn't in writing but verbally directed from Dr. Paulson."

27.     When Plaintiff again questioned why he was not receiving the prescribed Lyrica, he was told in writing October 3, 2014, that "A policy has been instituted stating that Lyrica is only to be prescribed to diabetics. This policy change was provided verbally and no documentation can be provided."   Plaintiff was told to "please sign up

9

for sick call if you need to discuss alternative treatment options."  Plaintiff did seek a doctor's visit to again discuss his need for Lyrical.  While waiting for that visit, he received no medication for this condition, i.e. no Gabapentin or Lyrica from October 10, 2014 to October 16, 2014.  On October 16, 2014 he was seen by Defendant Dr. Quiram who confirmed that he should be receiving Gabapentin but again denied the Lyrica based on the medical director's blanket policy of denying it to all non-diabetics.

28.     Plaintiff's Lyrica was denied to Plaintiff Edward Ross Bergren, and to all class members, based on Defendants' unlawful and unconstitutional policy, custom and/or practice of denying the prescription medication Lyrica to all non-diabetic inmates for whom it has been prescribed.  Plaintiff and the class members he represents are being denied access to this drug—which has been specifically prescribed for them by their attendant medical personnel—on the basis of a blanket policy that Lyrica will not be provided to any non-diabetic inmate.

29.     In addition to being FDA approved for Neuropathic Pain Associated with Diabetic Peripheral Neuropathy, Lyrica it is also FDA approved for several conditions not necessarily associated with diabetes, including Postherpetic Neuralgia, Fibromyalgia, Partial Onset Seizures (as adjunctive therapy), and Neuropathic Pain Associated with Spinal Cord Injury.  Moreover, Lyrica is regularly prescribed "off-label" for numerous disorders, including Restless Leg Syndrome, Generalized Anxiety Disorder, chronic pain, migraine headaches, and pain after surgery.

30.    Under Defendants' blanket policy, Lyrica is withheld regardless of the non-diabetes condition for which it was prescribed, regardless of the medical condition of the inmate to which it is being denied, regardless of its effectiveness in treating the condition for which it was prescribed, and regardless of the effectiveness of the substitute medication (on information and belief, usually generic Gabapentin (originally sold as the branded drug "Neurontin") being given in its place.

31.    Gabapentin (originally sold as the branded drug "Neurontin") was the forerunner of Lyrica.  It is milder than Lyrica and is not as effective in treating conditions for which both compounds are prescribed—particularly, although not exclusively, in patients who are in the advanced stages of these conditions or have been suffering from them for longer periods of time.

32.    Gabapentin is significantly cheaper than Lyrica. On information and belief, generic Gabapentin was provided in place of Lyrica to save money—regardless of the therapeutic benefit, or lack thereof, of the Gabapentin and regardless of the inmate's need for Lyrica rather than Gabapentin.

33.    Inmates are completely denied access to the Lyrica that has been prescribed for them, with no recourse.  There is no mechanism for them—or medical personnel—to show that the denial of the Lyrica is causing serious pain, discomfort or injury, and there is no mechanism to show that the substitute medications are not effective in providing the relief for which the Lyrica was prescribed.

11

34.    On information and belief, Defendants have also denied the full prescribed dosage of Lyrica to diabetic inmates for whom it has been prescribed.  On information and belief, these diabetic inmates have been denied their full prescribed dosage of Lyrica on the basis of a blanket policy designed to save money regardless of the therapeutic benefit, or lack thereof, of the diminished dosage, and with no individualized assessment of the need for the full dosage or the efficacy of the diminished dosage.  They have likewise been denied their Eighth Amendment rights to provision of adequate medical care. Inmates denied their full prescribed dosage of Lyrica may constitute an additional class or subclass to be added to this lawsuit at a later date.

35.    On information and belief, Defendants have also denied prescription medications other than Lyrica to inmates, for whom they have been prescribed, including possibly the prescription medication Wellbutrin.  These other inmates, who have been denied their prescription medications on the basis of a blanket policy designed to save money regardless of the therapeutic benefit, or lack thereof, of the substituted medication, and with no individualized assessment of the need for the denied medication or the efficacy of the substituted medication, have likewise been denied their Eighth Amendment rights to provision of adequate medical care. Inmates so denied medications other than Lyrica may constitute additional classes or subclasses to be added to this lawsuit at a later date.

## CLASS ALLEGATIONS

36.     This action is brought and may properly be maintained as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure. Plaintiff brings his action on behalf of himself and all others similarly situated, as the representative member of the following class:

> All United States citizens who are currently, or have been in the past six years, imprisoned by the Minnesota Department of Corrections and who were prescribed the prescription drug Lyrica by their attending medical personal but who were refused access to this needed medication by the Department of Corrections and/or its medical staff, prison personnel or contracted-with third party provider of medical services pursuant to a blanket policy of not providing this drug to any inmate who did not suffer from diabetes.

### Numerosity
### Fed. R. Civ. P. 23(a)(1)

37.     The class is so numerous that joinder of the individual members of the proposed class is impracticable. If Plaintiff is correct that the denial of the prescription drug Lyrica was done on a mass basis pursuant to a custom and/or policy of denying the prescription drug Lyrica to any non-diabetic Minnesota inmate to whom it had been prescribed, the number of class members may be in the hundreds or even more. While the exact number and identities of class members are unknown at this time and can only be ascertained through appropriate investigation and discovery, Plaintiff believes that the members of the class are readily identifiable from records in the possession of Defendants.

**Commonality of Questions of Law and Fact**
**Fed. R. Civ. P. 23(a)(2) and 23(b)(3)**

38.     Questions of law and fact arising out of the denial of the prescription drug Lyrica, pursuant to a blanket policy denying access to this drug to all non-diabetic inmates in the Minnesota prison system for whom it has been prescribed are common to all members of the class and predominate over any questions affecting only individual members of the class.

39.     The members of the class seek to remedy a common legal grievance. They were all similarly victimized by the custom and/or policy complained of herein. All members of the class were denied access to the medication prescribed for them solely because they did not suffer from diabetes regardless of their individual circumstances, their individual medical conditions, and the reasons the drug was prescribed. The denial of access to the prescription drug Lyrica was done on a mass basis as a matter of course, policy and/or custom, without cause, and with no analysis of the need for the drug or the consequences of not providing the drug.

**Typicality of Claims**
**Fed. R. Civ. P. 23(a)(3)**

40.     Plaintiff's claims are typical of the members of the class. Plaintiff and all members of the class sustained damages directly caused by Defendants' wrongful, illegal, and unconstitutional conduct. That conduct was similar, if not exactly the same, toward each of the class members, in that each class member was denied access to the prescription drug Lyrica that had been prescribed for them pursuant to a blanket practice,

14

policy and/or custom complained of herein. The Eighth Amendment rights of the Plaintiff and of each class member were violated in the same manner and by the same conduct.

## Adequacy of Representation
## Fed. R. Civ. P. 23(a)(4)

41.     Plaintiff will fairly and adequately protect the interests of the members of the class. Plaintiff has no interests adverse to the interests of absent class members. Plaintiff, like all class members, was denied access to the prescription drug Lyrica that had been prescribed for them by medical personnel pursuant to a blanket practice, policy and/or custom complained of herein. Plaintiff has retained counsel with significant experience in the prosecution of large, complex, multi-plaintiff litigation, including prison class action litigation.  Plaintiff's counsel will vigorously prosecute this action.

## Appropriateness and Superiority
## Fed. R. Civ. P. 23(b)(3)

42.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since individual joinder of all members of the class is impracticable. Even if class members could afford individual litigation, the number of such individual actions would prove unduly burdensome to the courts. Individual litigation magnifies the delay and expense to all parties.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum will promote judicial economy and efficiency and promote parity among the claims of individual class members as well as

15

judicial consistency. The conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member. Notice of the pendency and of any resolution of this action can be provided to the class members by U.S. mail.

## COUNT I
### Denial of Adequate Medical Care in
### Violation of the Eighth Amendment
(Brought against Defendants Roy, Larson, Paulson,
Smith, Quiram, Brown, Centurion and Cross Country
in their individual capacities)

43. Plaintiff hereby realleges and incorporates by reference the allegations complained within the above paragraphs of this Complaint as if again set forth in their entirety here.

44. The denial of the prescription drug Lyrica was done pursuant to a blanket practice, policy, and/or custom of defendants DOC, and Centurion of denying this drug to all non-diabetic inmates for whom it was prescribed. The County's practice, policy, and/or custom did not require an evaluation of the individual inmate's medical condition, did not allow for Lyrica to be provided if the other substituted drugs were ineffective (so-called "step therapy"), and did not account for the consequences of not providing this needed prescription medication.

45. While incarcerated in Defendants' custody, Plaintiff Edward Ross Bergren, and the class he represents, had a constitutional right under Eighth Amendment to the United States Constitution's prohibition of cruel and unusual punishment to have their basic human needs met, including to receive adequate medical care. Provision of

16

adequate medical care includes receiving the prescription medications that they have been prescribed.

46.     Denial of readily available treatment for a serious medical condition constitutes deliberate indifference by prison officials.  Serious medical conditions include conditions that have been diagnosed by a physician as mandating treatment, such as those for which medications have been prescribed.  Continued injury, pain or loss of function constitutes a "serious medical need" even if they are not life-threatening and even if the failure to treat it does not make the condition worse.  Failure to carry out medical orders constitutes an actionable harm.  Further, reliance on non-medical factors in making testament decisions constitutes an actionable harm.

47.     Deliberate indifference to an inmate's medical needs—including access to prescribed medications—constitutes a violation of Eighth Amendment rights.

48.     Plaintiff Edward Ross Bergren, and the class he represent's constitutional right to receive adequate medical care—including prescribed medications—was clearly established.

49.     Defendants were subjectively aware of the denial of prescribed medications to Plaintiff Edward Ross Bergren, and the class he represents, and of the risks associated with not providing inmates with their prescription medications, and were deliberately indifferent to that risk.

50.     Further, Defendants either established the practice, policy and/or custom complained of, or knew or should have known of its existence, or were deliberately

indifferent to the fact that all non-diabetic inmate's who had been prescribed Lyrica were being denied their prescribed medication.

51.     As a direct and proximate result of Defendants' acts and/or omissions as described herein, Defendants, while acting under color of state law, deprived Edward Ross Bergren, and the class he represents, of their federal constitutional right to receive adequate medical care in the form of prescribed medications, in violation of the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

52.     As a further direct and proximate result of Defendants' acts and/or omissions, as described herein, Plaintiff, and the class he represents, suffered violations of their rights, privileges, and immunities under the Constitution of the United States and suffered damages and injuries in an amount in excess of $75,000.

## COUNT II
### Failure to Train
(Brought against Defendants Roy, Larson, Paulson,
Smith, Centurion and Cross Country in their individual capacities)

53.     Plaintiff hereby realleges and incorporates by reference the allegations complained within the above paragraphs of this Complaint as if again set forth in their entirety here.

54.     The denial of needed medical care to Edward Ross Bergren and the class he represents was a direct result not only of Defendants' acts and/or omissions in violation of the Eighth Amendment to the United States Constitution as described herein, but also of constitutional violations caused by Defendants' failure to train its employees on how to adequately provide prescription medications to inmates.  Defendants' failure to train its

18

employees in these ways amounted to deliberate indifference to the constitutional rights of Edward Ross Bergren, and the class he represents.

55.     As a direct and proximate result of Defendants' failure to train, as described herein, Defendants, while acting under color of state law, deprived Edward Ross Bergren and the class he represents of their federal constitutional right to receive adequate medical care in violation of the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

56.     As a further direct and proximate result of Defendants' failure to train, as described herein, Plaintiff, and the class he represents, suffered violations of their rights, privileges, and immunities under the Constitution of the United States and suffered damages and injuries in an amount in excess of $75,000.

## COUNT III
### Injunctive Relief
(Brought against Defendant DOC, and against Defendants Roy,
Larson, Paulson, and Smith, in their official capacities)

57.     Plaintiff hereby realleges and incorporates by reference the allegations complained within the above paragraphs of this Complaint as if again set forth in their entirety here.

58.     The violations of the Eighth Amendment rights of Plaintiff Edward Ross Bergren and the class he represents are on-going.

59.     Plaintiff Edward Ross Bergren, on behalf of himself and the class he represents, requests an injunction enjoining Defendants from 1) denying Lyrica to all non-diabetic inmates to whom it has been prescribed, 2) establishing an appeal process or

instituting a step-therapy like methodology so that inmates may have their individualized need for Lyrica assessed and may have a pathway to getting Lyrica where substitute medications are ineffective, and 3) establishing other processes and methods for alleviating the Eighth Amendment violations stated herein as is just and proper.

60.     A class action may be maintained for this injunctive relief pursuant to Fed. R. Civ. P. 23(b) (2).

61.     On information and belief, Defendants have also denied prescription medications other than Lyrica to inmates for whom they have been prescribed.  Plaintiff Edward Ross Bergren also requests an injunction enjoining Defendants from 1) denying any prescribed medication to any inmate to whom it has been prescribed based on a blanket policy designed to save money regardless of the therapeutic benefit, or lack thereof, of the substituted medication, and with no individualized assessment of the need for the denied medication or the efficacy of the substituted medication, 2) establishing an appeal process or instituting a step-therapy like methodology so that inmates may have their individualized need for their prescribed medication assessed and may have a pathway to getting their prescribed medication where substitute medications are ineffective, and 3) establishing other processes and methods for alleviating the Eighth Amendment violations stated herein as is just and proper.

## COUNT IV
### Vicarious Liability – Defendant DOC

62.     Plaintiff hereby realleges and incorporates by reference the allegations complained within the above paragraphs of this Complaint as if again set forth in their entirely here.

63.     At all times relevant herein, Defendants Roy, Larson, Paulson, and Smith were acting in the course and scope of their employment.  Defendant DOC is therefore vicariously liable on a *respondeat superior* basis for the conduct of each of these Defendants, and the damages sustained by Plaintiff and the class he represents, as a result of that conduct.

64.     At all times relevant herein, Defendants Quiram and Brown were acting in the course and scope of their employment.  Defendants and Centurion are  therefore vicariously liable on a *respondeat superior* basis for the conduct of each of these Defendants, and the damages sustained by Plaintiff and the class he represents, as a result of that conduct. Likewise, Defendant DOC is therefore vicariously liable on a *respondeat superior* basis for the conduct of each of these Defendants, and the damages sustained by Plaintiff and the class he represents, as a result of that conduct.

65.     That other actors may have likewise been responsible, in their individual capacities, for the constitutional violations alleged herein, and may have liability to the Plaintiff and the class he represent.  The identity of those other actors is known to the Defendants and, to the extent they exist, they will be added to this action as discovery and investigation continues.

## JURY DEMAND

66.     Plaintiff requests a trial by jury on each Count in this Complaint so triable and on any additional or amended Counts so triable that may hereafter be alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, and each of them jointly and severally, as follows:

A.      That this case be tried before a jury;

B.      That this Court certify the class and appoint Plaintiff and his counsel to represent the class;

C.      That this Court find that Defendants, and each of them, committed acts that constituted violations of the Eighth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983;

D.      That this Court enter a preliminary and permanent injunction ordering Defendants to refrain from denying Lyrica to all non-diabetic inmates who have been prescribed Lyrica or otherwise establishing a system for allowing inmates to show their need for Lyrica as described herein;

E.      That this Court enter a preliminary and permanent injunction ordering Defendants to refrain from providing diminished dosages of Lyrica to diabetic inmates to whom it has been prescribed pursuant to a blanket policy of cutting dosages or otherwise establishing a system for inmates to show their need for their full dosage;

F.     That this Court enter a preliminary and permanent injunction ordering Defendants to refrain from denying any prescription medications to inmates to whom they have been prescribed pursuant to a blanket policy or otherwise establishing a system for allowing inmates to show their need for their prescription medications as described herein;

G.     That this Court award monetary damages, including damages for physical injury, pain, and suffering, and special and general damages, to Plaintiff and the class members;

H.     That this Court award Plaintiff and the class members all applicable pre-judgment and post-judgment interest;

I.     That this Court rule that Defendants Roy, Larson, Paulson, Smith, Quiram, Brown, Centurion, and Cross Country were acting in the course and scope of their employment and/or contractual relationships and that, therefore, Defendant DOC is vicariously liable on a *respondeat superior* basis for the conduct of each of these Defendants and the damages sustained by Plaintiff and the class he represents as a result of that conduct;

J.     That this Court award Plaintiff and the class members their class action contingency attorneys' fees and costs or, in the alternative, their attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

K.     That this Court award such other and further relief as the Court may deem just and equitable.

Dated:  March 31, 2015

Respectfully submitted,

**BENNEROTTE & ASSOCIATES, P.A.**


By:   _s/ Vincent J. Moccio_
        Vincent J. Moccio (#184640)

3085 Justice Way, Suite 200
Eagan, Minnesota 55121
(651) 482-9257
Email: vincent@bennerotte.com

**ATTORNEYS FOR PLAINTIFF EDWARD ROSS BERGREN, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**